## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JEREMY SORENSON,

Plaintiff,

v.

NICHOLAS GRAY; and ROBERT B. ALVAREZ,

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Jeremy Sorenson, by his attorneys, for his Complaint states:

### Nature of the Case

1. This is an action to recover Plaintiff Jeremy Sorenson's damages resulting from Defendants' defamation of his good name, reputation, and character by making and publishing to third parties several false and defamatory statements about him. Those statements include, but are not limited to, Defendants' announcement of their unlawful suspension of Sorenson on the website of Uniformed Services Justice & Advocacy Group ("USJAG") and in social media while gratuitously impugning his character, causing severe harm to his professional reputation and personal well-being.

### Parties

2. Plaintiff Jeremy Sorenson is a citizen of the United States and a resident of the State of Nevada.

3. Plaintiff is a dedicated retired service member.

4. He enlisted in the Air National Guard in 1999, serving initially as a firefighter.

5. He then earned his commission and served as a fighter pilot, flying the F-16 and A-10 in multiple combat deployments.

6. He retired from the US Air Force Reserve in 2020.

7. He is currently employed as a commercial airline pilot.

8. Defendant Nicholas Gray ("Gray") is a resident of Colorado.

9. Defendant Robert B. Alvarez ("Alvarez") is a resident of Colorado.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties. Plaintiff is a citizen of Nevada; Defendants are citizens of Colorado.

11. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

12. Alternatively, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district and are subject to personal jurisdiction in Colorado.

13. Defendants are subject to personal jurisdiction in Colorado because they are citizens of Colorado.

## General Allegations

14. USJAG describes itself as "a leading advocate for injured, ill, and wounded service members, dedicated to exposing systemic issues and driving change to improve military care and benefits." Defendants claim that USJAG has secured "over $600 million in benefits" for such service members, and "over $10,000,000 in lifetime benefits for our clients and family members" in 2023, but those claims are exaggerated and untrue.

15. Prior to Plaintiff's resignation from USJAG on January 27, 2025, he served as USJAG's Director of Guard & Reserve Affairs. He did so with dedication, honor, and commitment.

16. Prior to Plaintiff's resignation from USJAG on January 27, 2025, Plaintiff also served as a member of the board of directors of USJAG.

17. Prior to Plaintiff's resignation from USJAG on January 27, 2025, the five directors of USJAG were Plaintiff, Alvarez, Gray, Andreas Pogany, and Ryan Sweazey.

18. Plaintiff was appointed to the board of directors by unanimous vote at a duly noticed meeting of the board on October 20, 2024.

19. The minutes of that meeting state, among other things,

> **III. Consideration of Open Issues**
> 1. Two (2) additional board members will be appointed to the Board of Directors.
>> a. Robert B. Alvarez hereby motions [sic] the following to be appointed to the Board of Directors.
>>> i. Jeremy Sorenson, Director of Guard and Reserve Affairs of USJAG

      ii. Ryan Sweazey, Founder of Walk the Talk Foundation
  b. Nic Gray seconded the motion.
  c. Motion passed.

20. Under Section 3.1 of USJAG's bylaws, all affairs of the organization are directed and managed by the Board of Directors. No individual is authorized to act on behalf of the organization without the Board's express authorization.

21. Under Section 3.3 of USJAG's bylaws, the board of directors is required to hold regular meetings upon advance written notice.

22. Under Section 3.4 of USJAG's bylaws, the board of directors may hold special meetings upon advance written notice.

23. Under Section 3.8 of USJAG's bylaws, the board of directors—and thus USJAG—may only act by a majority vote of the board of directors at duly noticed meetings at which a quorum of directors is present.

24. Under Section 3.12, of USJAG's bylaws, a director may be removed only by a majority vote of the board of directors at a duly noticed and convened meeting.

25. Alvarez and Gray are aware of the requirements of the bylaws of USJAG. They were members of the board of directors when the organization adopted its bylaws.

26. Defendants' defamation campaign began after Plaintiff informed USJAG that Defendants were deceiving donors, withholding information from the USJAG Board of Directors, and intending to misappropriate 501(c)(3) donations for personal gain.

27. Specifically, on January 6, 2025, Gray and Alvarez sent the following email to supporters of USJAG:

4

Subject: Fwd: Kicking Off 2025 Together – A Message from USJAG

. . .

**A New Year, Renewed Commitment**

. . .

As we begin this new year, we at USJAG want to express our heartfelt gratitude for your unwavering support. Your generosity has been instrumental in advancing our mission to advocate for injured service members and their families, ensuring justice and dignity for those who have sacrificed so much.

2024 was a year of challenges and triumphs. Together, we brought attention to systemic issues impacting service members, provided crucial support to families in need, and expanded our outreach efforts. We could not have done this without you.

Looking ahead, 2025 promises to be an exciting year for USJAG. Here's what's on the horizon:

- **New Advocacy Campaigns:** We are launching initiatives to raise awareness about the long-term effects of wrongful discharges and systemic challenges faced by service members. These campaigns will amplify their stories and push for necessary reforms.

- **Strategic Partnerships:** We're collaborating with like-minded organizations and leaders to create a unified front in addressing systemic injustices and delivering comprehensive support to those in need.

- **Community Engagement:** New workshops and resources will soon be available for families navigating the challenges of wrongful discharges and inadequate support systems.

Your contributions fuel these initiatives and so much more. Together, we're making a tangible difference.

**Join Us in 2025**

We're excited to share these milestones with you throughout the year. Follow us on social media, attend our events, and stay connected. Your involvement inspires us and ensures our continued success.

Thank you for being a cornerstone of the USJAG family. Here's to another year of impactful advocacy and transformative change.

Warm regards,
Nic Gray
CEO, USJAG

**P.S.** Your continued support means the world to us. Consider starting 2025 with a recurring donation to help us plan and execute our initiatives effectively. Every bit counts.

28.  After this email was sent, Sorenson notified Alvarez by telephone on or about January 14, 2025, that it contained false and deceptive statements, because in fact, USJAG's board of directors had received no information about, and taken no action or approved, any "new advocacy campaigns," "strategic partnerships," or "community engagement." Plaintiff also advised Alvarez that the statement, "New workshops and resources will soon be available for families navigating the challenges of wrongful discharges and inadequate support systems," was untrue.

29. On August 31, 2023, Gray sent an email to supporters of USJAG:

Subject: USJAG September Newsletter & 2023 Impact Numbers

September 2023 Newsletter

...

Last month, we sent out a Client Spotlight Series highlighting some notable cases USJAG has won this year alone.

In 2023, USJAG has successfully secured over **$10,000,000** in lifetime benefits for our clients and their family members. By the end of this year, that number is expected to exceed **$25,000,000**.

**New Family Member**

I want to officially welcome Jeremy Sorenson, Director of Guard & Reserve Affairs. You can read his bio below.

Request: Send him a special welcome message by replying to this email.

**Upcoming News**

I've been teasing a story by a major national news outlet that will send shockwaves across this country. It was slated to be published back in June of this year; however, due to the media news cycle, the story's publication date keeps getting pushed back.

Rest assured, though, when the story is published, an email will be sent out to alert you.

Following us on Social Media is another way to stay up-to-date in real-time. You can find links to our accounts in the footer of this newsletter.

**Share the Love**

Thank you to all of our donors, clients, and supporters. Please share this newsletter with your family, friends, neighbors, and colleagues.

Ask them to join our family.

Sincerely,
Nic Gray, CEO

30. On or about January 14, 2025, Plaintiff notified Alvarez that the September 2023 Newsletter contained false and deceptive statements. USJAG had not "secured over $10,000,000 in lifetime benefits for our clients and their family members" in the year 2023, and it was not "expected to exceed $25,000,000" by the end of 2023, nor did such occur. Plaintiff expressed concern to Alvarez that Gray was repeatedly deceiving donors and the public on behalf of USJAG to solicit donations.

***The Press Release***

31. Beginning on or about January 27, 2025, and continuing to the present, Defendants have published the following press release (hereinafter, the "Press Release") on the home page of USJAG's website under the heading "Latest Articles," prefaced with the statement "USJAG has made the difficult decision to suspend Jeremy Sorensen due to a lack of confidence in his ability to uphold the culture and ethos that defines the organization…"

### FOR IMMEDIATE RELEASE:
### USJAG Suspends Jeremy Sorensen;
### Reaffirms Commitment to
### Advocacy and Change

Colorado Springs, CO – January 27, 2025 – USJAG has suspended Jeremy Sorensen, Director of Guard & Reserve Affairs.

For over 18 years, USJAG has tirelessly served injured, ill, and wounded service members, championing their needs and securing the critical benefits they deserve.

Since its founding in 2007, USJAG has been a steadfast advocate for improving warrior care and addressing systemic issues that harm military members. From uncovering and addressing the effects of blast overpressure to highlighting abuses in mental health practices, poor pharmaceutical management, and abusive discharge practices, USJAG has brought these egregious practices to light, driving corrective changes through media exposure and legislative action.

"Our mission has always been to elevate these harmful practices to those with the power and responsibility to protect our service members," said Nic Gray, CEO of USJAG. "The suspension of Mr. Sorensen reflects our unwavering commitment to the values and standards that guide our work."

USJAG remains resolute in its mission to educate senior military leaders, government officials, and the public about the challenges faced by those who have sacrificed their health in service to the nation. The organization's focus remains on being a catalyst for change and a trusted partner in advancing meaningful solutions.

"We have achieved countless hard-won victories in securing better care and outcomes for our service members, and we will continue to push for systemic improvements," added Robert Alvarez, Founder of USJAG. "Our goal is to be part of the solution, ensuring our military members receive the respect, care, and benefits they rightfully deserve."

Sincerely,

Nic Gray, CEO & Board Member

32. Upon information and belief, both Gray and Alvarez authorized publication of this release.

33. In addition to publishing the Press Release on USJAG's website, Defendants disseminated it through various forms of social media, including X (formerly Twitter) and Facebook. Defendants have "Pinned" the Press Release on the USJAG social media accounts continuously since January 27, 2025, and employed fake X accounts known as "bots" to "repost" it, in a blatant and malicious effort to cause maximum reputational damage to Plaintiff.

34. Defendants' statements in the Press Release that Plaintiff was "suspended" are false and were made with the intent to cause harm to Plaintiff.

35. This statement was false because no duly noticed meeting of USJAG's board of directors occurred at which Plaintiff was suspended as required by USJAG's bylaws.

36. Alvarez and Gray knew no such meeting ever occurred.

37. Defendants' statement in the title of the Press Release that USJAG's reported suspension of Plaintiff "Reaffirms [USJAG's] Commitment to Advocacy and Change" implies that Plaintiff's service as USJAG's Director of Guard & Reserve Affairs undermined and threatened that commitment.

38. Defendants knew this statement was false because USJAG and its board never received reports or other information that Plaintiff undermined or threatened this commitment.

39. Defendants' statement in the Press Release that "[t]he suspension of Mr. Sorensen reflects our unwavering commitment to the values and standards that guide our work" implies that Plaintiff's service as USJAG's Director of Guard & Reserve Affairs undermined and threatened the mission, values, and standards referenced in the Press Release.

40. Defendants knew this statement was false because USJAG and its board never received reports or other information that Plaintiff undermined or threatened this commitment.

41. Defendants' statement on USJAG.org, "USJAG has made the difficult decision to suspend Jeremy Sorensen due to a lack of confidence in his ability to uphold the culture and ethos that defines the organization…" was a malicious statement solely designed to cause harm to Plaintiff.

42. Defendants knew this statement was false because USJAG and its board never met, discussed, or otherwise communicated either an "ethos" or "culture" which Plaintiff purportedly violated or failed to uphold.

43. Defendants never communicated the unlawful "suspension" of Plaintiff to the Plaintiff at any time before, during, or after the Press Release—even though Plaintiff was a member of USJAG's board of directors.

44. The unlawful "suspension" of Sorenson was neither discussed nor approved by the Board of Directors of USJAG, and if any such thing occurred, it was the result of Gray and Alvarez acting unilaterally and without authority of the USJAG Directors.

### *The Text Exchanges*

45. At the time of Defendants' publication of the Press Release and immediately following, Gray further defamed Plaintiff in the following text exchanges:

> What's going on with Jeremy? I've only spoke to him twice in the last few years but always found him to be competent.

> [DEFENDANT NICHOLAS GRAY] Hey bud. All I can really say at this time per the advice of legal is in the release. But with that said, he's no longer a part of the organization as of about 20 minutes ago, and our clients and their family members are much safer now.

> Safer? Okay so this is serious….

> \* \* \* \* \* \* \*

> Why the suspension??

> [DEFENDANT NICHOLAS GRAY] I understand that you're taken aback by this, but the safety of all our clients and their family members come first. You know Robert and I well enough to understand that we wouldn't do anything unless it was warranted. It's a shitty situation all around but I can assure you it what [*sic*] the right thing to do.

46. The statements in this text exchange are defamatory. Gray's statement that "legal" was involved in Plaintiff's alleged suspension suggests that Plaintiff had violated the law. USJAG has no "legal" department.

47. Gray's statement that "we wouldn't do anything unless it was warranted" is false and was known by Gray to be false when he made it for the reasons stated above, and defamatory because it suggests Plaintiff had harmed the organization and needed to be suspended.

48. Gray's statement that "our clients and their family members are much safer now" is defamatory because it implies that Plaintiff made USJAG's clients and their family members unsafe.

49. Gray's comment about safety is particularly harmful to Plaintiff because he is a commercial airline pilot.

50. Commercial airline pilots face intense scrutiny regarding their safety records in light of public fear of crashes.

51. Statements that undermine a pilot's "safety" substantially harm and impede Plaintiff's ability to continue and obtain work as a commercial airline pilot.

52. Gray knew these statements were false and defamatory when he made them.

53. USJAG and its board of directors had never received any "advice of legal" regarding Plaintiff.

54. USJAG and its board of directors had never received any reports of client or family member safety.

55. USJAG and its board of directors did not suspend Plaintiff in accordance with the organization's bylaws.

### *The January 17, 2025 Email*

56. On January 17, 2025, Gray sent the following email to a third party, with a copy to Alvarez:

> From: **Nic Gray** <nic.gray@usjag.org>
> Date: Mon, Jan 27, 2025 at 5:02 PM
> Subject: Notice of Pending Suspension and Update on Raffle Funds
> To: Laura Klock <laura@helpingwithhorsepower.com>, Robert Alvarez robert.b.alvarez@usjag.org
>
> Good afternoon, Laura,
>
> I hope this email finds you well.
>
> We wanted to inform you about a significant matter regarding Jeremy Sorensen, who will soon be suspended from our organization. This decision comes after months of addressing various challenges associated with his actions.
>
> Most recently, Jeremy informed us that he cannot donate the motorcycle your organization graciously restored to raise funds through a raffle for our nonprofit. This development has deeply concerned us, particularly as the motor-

cycle raffle raised over $8,000, which, at Jeremy's insistence, was used to fund legal services for his clients. USJAG also allocated an additional $4,000 from its funds to augment this effort.

To ensure transparency and due diligence, we have consulted with South Dakota officials and state law enforcement regarding whether these actions meet the standard of "fraud." State law enforcement is currently reviewing the matter.

Our commitment to our donors and supporters remains steadfast. If Jeremy chooses not to proceed with the motorcycle donation, we are prepared to refund the donations already spent on legal services. Alternatively, if Jeremy agrees to honor his commitment, we will continue the raffle and ensure the funds are directed to the legal firm he has engaged for client representation.

This situation is particularly regrettable, as Jeremy correctly completed the raffle application process but failed to legally transfer the motorcycle to our nonprofit, as required by state law.

We deeply regret the embarrassment this has caused and the potential impact on your organization's trust in us. Please know that we are fully committed to rectifying this situation and safeguarding the integrity of our mission to support military service members.

We will also ensure your organization receives the agreed-upon portion of the money raised for the motorcycle raffle.

We will inform Jeremy of his suspension and eventual removal from our nonprofit at this time. While this is a complex and unprecedented decision in our 18-year history, we remain unwavering in our dedication to our mission.

We have attached a press release that outlines Jeremy's
suspension but focuses on our organization's commitment
to continuing our mission. Despite this setback, we are
steadfast in our resolve to support and advocate for mili-
tary service members, their families, and our community.

Thank you for your continued partnership and understand-
ing during this challenging time. Please don't hesitate to
reach out if you have any questions or need additional in-
formation.

Robert and I will be traveling over the next few days, but
we will monitor our emails and phones as much as possible.

**Nic Gray** | CEO

57. Defendants' statement in the email that there have been "months of address-
ing various challenges associated with [Plaintiff's] actions" is false and defamed
Plaintiff in his business, profession, or office.

58. No "challenges" or "actions" of Plaintiff have ever been addressed by the Board
of Directors of USJAG.

59. The press release was never authorized by USJAG as required by its bylaws.

60. Defendants' email includes the statement that "we have consulted with South
Dakota officials and state law enforcement regarding whether these actions meet the
standard of 'fraud.' State law enforcement is currently reviewing the matter." It goes
on to state that Plaintiff "failed to legally transfer the motorcycle to our nonprofit, as

required by state law." These statements imputed to Plaintiff the commission of a crime, as well as defaming Plaintiff in his business, profession, or office.

61. None of the allegations communicated in this email was ever discussed with Plaintiff or the Board of Directors of USJAG.

62. Plaintiff has contacted South Dakota authorities, who provided no record of the alleged "investigation" described in Gray's email.

### *The Posts on X (formerly Twitter)*

63. On or about February 2, 2025, Defendant Robert B. Alvarez posted the following on X (formerly Twitter) in three separate postings:

> Anyone who aligns with Jeremy Sorenson aligns with bullying clients for Jeremy's own benefit, using mentally damaged clients for their own goal, threatening them … men who have suffered egregious injury from our military to have to endure more from him (we have recordings).

> Furthermore, he donated a motorcycle to raise money, we gave him-all the money to pay for legal services, he reneged after spending this money. Fraudulent

> Sad, a man who claims to care about wounded, would wound them more for his self interests. I'm disgusted, after 18 yrs of working with our wounded … he's a disgrace to the uniform.

64. Defendants' statement in the email that "he donated a motorcycle to raise money, we gave him-all the money to pay for legal services, he reneged after spending this money. Fraudulent" is false and defamed Plaintiff in his business, profession, or office and imputed to Plaintiff the commission of a crime.

65. Plaintiff has never been given any money by USJAG, nor has Plaintiff ever spent any money raised from the motorcycle raffle.

66. Defendant's statements disparage Plaintiff's 21 years of honorable military service and knowingly make false claims that Plaintiff threatened and harmed the individuals that Plaintiff has dedicated much of his life to advocating for.

### Other Communications

67. Defendants have transmitted additional defamatory statements regarding Plaintiff to multiple third parties.

68. Defendants have prevented Plaintiff from responding to their false allegations by revoking Plaintiff's access to email.

69. Upon information and belief, Defendants made false reports to deny Plaintiff access to social media.

### Harm

70. Plaintiff is a commercial airline pilot with over 25 years of experience in the aviation industry and an impeccable safety record.

71. Prior to Defendant's defamatory statements, Plaintiff reasonably anticipated lifetime earnings of approximately $5,000,000 for the remainder of Plaintiff's career spanning the next twenty years.

72. Defendant's false and defamatory statements that Plaintiff is "unsafe" have caused, and continue to cause, substantial and irreparable harm to Plaintiff's professional reputation within the aviation industry, where safety is the paramount consideration.

73. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered and will continue to suffer actual damages, including but not limited to:

    a.  Loss of current and future employment opportunities;

    b.  Diminished earning capacity;

    c.  Professional reputational harm; and

    d.  Mental anguish, emotional distress, and humiliation.

74. The defamatory statements directly impair Plaintiff's ability to secure comparable employment in the aviation industry, as airlines and other potential employers view safety as an essential qualification for pilots and are reluctant to hire pilots whose safety practices and actions have been called into question.

75. Plaintiff estimates that the defamatory statements have reduced Plaintiff's anticipated lifetime earnings by at least 10% of his pre-defamation estimated lifetime earnings due to potential termination, difficulty securing comparable employment, and/or diminished advancement opportunities.

76. In addition to compensatory damages for lost wages and professional opportunities, Plaintiff seeks damages for emotional distress, mental anguish, and reputational harm in an amount to be determined at trial, but not less than $100,000.

77. Plaintiff is a well-respected and dedicated advocate for veterans' rights who has successfully helped numerous veterans recover between $3,000,000 and $5,000,000 in lifetime benefits.

78. Defendant's defamatory statements falsely assert that Plaintiff does not genuinely care for veterans' rights and is instead motivated by self-gain, thereby severely damaging Plaintiff's reputation and credibility as a veterans' advocate.

79. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has experienced and will continue to experience:

    a.  Diminished ability to effectively advocate for veterans;

    b.  Loss of trust within the veterans' community;

    c.  Rejection of Plaintiff's advocacy by veterans' organizations; and

    d.  Reduction in the number of veterans who seek Plaintiff's assistance.

80. The damages associated with harm to Plaintiff's advocacy work will be in an amount to be determined at trial, but not less than $100,000.

81. Plaintiff seeks damages for reputational harm within the veteran community in an amount not less than $100,000, to be proven at trial.

## Joint and Several Liability

82. Defendants consciously conspired and deliberately pursued a common plan or design to defame Plaintiff and thereby cause him injury, damage, and loss.

83. Therefore, joint and several liability should be imposed on Defendants as provided in C.R.S. § 13-21-111.5(4).

## Conditions Precedent

84. All conditions precedent to the bringing of this action have been performed or have occurred.

## First Claim for Relief
### (Libel Per Se)

85. Plaintiff incorporates herein the allegations set forth above.

86. Defendants published or caused to be published the statements about Plaintiff quoted herein.

87. The statements were defamatory.

88. The statements imputed to Plaintiff the commission of a crime, and/or defamed Plaintiff in his business, profession, or office, and were thus libelous per se.

89. The substance or gist of the statements were false at the time they were published.

90. At the time of publication, Defendants, and each of them, knew that the statements were false or made the statements with reckless disregard as to whether they were false.

91. Plaintiff has sustained injury, damage, and loss caused by Defendants' publication of the statements, including emotional harm and damage to his reputation.

WHEREFORE, Plaintiff prays for judgment under his First Claim for Relief against Defendants Nicholas Gray and Robert B. Alvarez, and each of them, jointly and severally as provided in C.R.S. § 13-21-111.5(4), in the amount established by the evidence, for an award of his attorneys' fees and costs incurred herein as available by law, and for such other and further relief as this Court deems just and proper.

## <u>Second Claim for Relief</u>
### (Civil Conspiracy)

92. Plaintiff incorporates herein the allegations set forth above.

93. Defendants agreed among themselves, by words or conduct, to accomplish an unlawful goal, namely, to defame Plaintiff as described herein.

94. One or more acts were performed by Defendants to accomplish the unlawful goal.

95. Plaintiff has sustained injury, damage, and loss caused by the acts performed to accomplish the unlawful goal.

WHEREFORE, Plaintiff prays for judgment under his Second Claim for Relief against Defendants Nicholas Gray and Robert B. Alvarez, and each of them, jointly and severally as provided in C.R.S. § 13-21-111.5(4), in the amount established by the evidence, for an award of his attorneys' fees and costs incurred herein as available by law, and for such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial on all issues so triable.

DATED this 26 day of February 2025.

Respectfully submitted,

FIRST & FOURTEENTH PLLC

*/s/ Andrew Nussbaum*
Andrew M. Nussbaum
Edward A. Gleason
First & Fourteenth PLLC
2 N. Cascade Ave., Suite 1430
Colorado Springs, CO 80903
Phone: (719) 428-3093
Email: andrew@first-fourteenth.com

*Attorneys for Plaintiff Jeremy Sorenson*

Address of Plaintiff:

Jeremy Sorenson
304 S. Jones Blvd.
Las Vegas, NV 89107