**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00632-KAS

JEREMY SORENSON,

Plaintiff,

v.

NICHOLAS GRAY, and ROBERT B. ALVAREZ,

Defendants.

---

**PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE**

---

Plaintiff Jeremy Sorenson ("Plaintiff"), by and through his undersigned counsel, respectfully submits this Motion for Sanctions for Spoliation of Evidence, pursuant to Fed. R. Civ. P. 37(e), and in support thereof, states as follows:

## CERTIFICATION PURSUANT TO D.C.COLO.LCivR 7.1(a)

Pursuant to D.C.COLO.LCivR 7.1(a), Plaintiff's counsel certifies that they conferred with counsel for Defendants Nicholas Gray and Robert B. Alvarez ("Defendants") regarding the relief requested herein. Plaintiff's counsel understands that the Motion is opposed.

## INTRODUCTION

This lawsuit involves three current and former board members of the Uniformed Services Justice & Advocacy Group ("USJAG"), an organization that advocates on behalf of veterans and servicemembers. Plaintiff's claims arise out of Defendants' actions to create and publicly disseminate defamatory statements regarding Plaintiff, falsely claiming, *inter alia*, that Plaintiff's conduct threatened the safety of USJAG clients and their families.

According to Defendants, they suspended Plaintiff from the organization and published statements regarding that suspension and their alleged safety concerns because Plaintiff abused clients through verbal assault, threats, and coercion, and those alleged actions put clients of the organization that were suicidal "at risk."

One of the cornerstones of Defendants' argument that Plaintiff was abusive towards clients is a January 24, 2025 recorded phone conversation between Alvarez and USJAG client James Buckley (the "Buckley Recording"). According to Defendants, the Buckley Recording—and the verbal abuse, bullying, and threats allegedly relayed by Buckley—gave them "serious concerns" regarding Plaintiff's conduct and ultimately led to Plaintiff's suspension from USJAG.

When Defendants decision to suspend Plaintiff (and the manner they elected to communicate it) came under scrutiny, Alvarez took to social media to renew the attack on Plaintiff's character and reputation, and to make clear that Alvarez had the evidence—including the Buckley Recording—he insisted would back up Defendants' actions. Alvarez wrote:

> Anyone who aligns with [Plaintiff] aligns with bulling clients for [Plaintiff's] own benefit, using mentally damaged clients… threatening them… men who have suffered serious injury form our military to [sic] have to endure more from him **( we have recordings ).**

Alvarez made similar comments on January 29, 2025, to an attorney working alongside USJAG, claiming that his conversations with Buckley and other clients:

> Painted a deeply disturbing picture of abuse of severely compromised service members who were genuinely terrified of any more contact from [Plaintiff]… **I have recorded these to protect all involved**.

By that time, Defendants were well aware of the prospect of litigation over their statements and actions. Plaintiff sent a cease-and-desist email threating litigation the same day the press release was issued; and a law firm representing Plaintiff at the time followed up with a demand

letter—including an express advisement of Defendants duty to preserve all potentially relevant evidence—a few days later.

The foregoing notwithstanding, Defendants now admit that the Buckley Recording was deleted.

Because the Buckley Recording should have been preserved in anticipation of this litigation but was lost because Defendants failed to take any steps to preserve it, and because it cannot be restored or replaced through additional discovery, Fed. R. Civ. P. 37(e) mandates that sanctions—including precluding Defendants from presenting testimony regarding the content of the Buckley Recording—are warranted.

## STATEMENT OF FACTS

1. Plaintiff is a veteran of the United States Air Force, a commercial airline pilot, and a volunteer advocate for injured veterans and servicemembers. He began working with USJAG in or around June 2023 as Director, Guard and Reserve Affairs, and was elected to the Board of Directors in or around October 2024.

2. At all relevant times, Defendants also served on USJAG's Board of Directors.

3. On January 27, 2025, without consulting Plaintiff or convening the Board of Directors, Defendants issued a press release on USJAG's website and several social media platforms announcing Plaintiff's suspension from USJAG. Am. Compl. at 9-10.

4. Defendants explained that the organization's "clients and their family members are much safer now" and "the safety of all our clients and their family members come first." Exhibit 1, N. Gray text message with K. Stancik; Exhibit 2, N. Gray text message with J. Bowes.

5. In discovery, Defendants further explained that the suspension and their purported safety concerns were premised on input from three of Plaintiff's clients: Karolina Stancik, James Buckley, and Rich Cullen. Exhibit 3, April 23, 2026 deposition of Nicholas Gray ("Gray Dep.") at 100:14-25 (describing the three "data points" for the suspension and safety concerns as: (1) threats made by Plaintiff that Ms. Stancik allegedly conveyed to Alvarez over Thanksgiving 2024; (2) the Buckley Recording; and (3) Cullen's election to terminate his relationship with USJAG on January 27, 2025—the same day the press release was issued).

6. Defendants claim Ms. Stancik said Plaintiff "yelled, screamed. He scared the shit out of me" and reported that she had been "verbally abused by [Plaintiff] and it scared the hell out of her." Exhibit 4, September 14, 2026 deposition of Robert Alvarez ("Alvarez Dep.") at 160:3-4; Ex. 3, Gray Dep. at 100:17-18.

7. Ms. Stancik, however, has directly refuted Defendants' statements:

> Q. Did you tell Mr. Alvarez at Thanksgiving, or otherwise, that [Plaintiff] had, quote, scared the hell out of you, end quote?
>
> A. No.
>
> ***
>
> Q. Is there anything that you recall saying to Mr. Alvarez during Thanksgiving of 2024 that would have left him with the impression that [Plaintiff] was a threat to your safety or well-being?
>
> A. I don't think so. I don't recall saying anything that would have insinuated that.
>
> Q. And you didn't feel at the time that [Plaintiff] was a threat to your safety or well-being correct?
>
> A. Absolutely not.
>
> Q. And you don't feel that way now, correct?

A. I have never once felt that way about him.

Exhibit 5, September 24, 2026 deposition of Karolina Stancik ("Stancik Dep.") at 31:14-21, 33:3-15.

8. As for Cullen, Defendants now admit they never even spoke with him prior to suspending Plaintiff; and instead, merely assumed—incorrectly[1]—that he was terminating his relationship with USJAG for the same reasons James Buckley allegedly articulated in the Buckley Recording a few days earlier. Ex. 4, Alvarez Dep. 177:8-11 ("And I didn't even call Cullen because, again, we've never been fired before. I have to assume it had something to do with the same thing.").

9. According to Defendants, Buckley reported—in the Buckley Recording—that Plaintiff had "yell[ed] at him…threatening him," and that Buckley terminated his relationship with USJAG because he could no longer deal with Plaintiff's "abusive nature." Ex. 3, Gray Dep. at 96:1-5; Ex. 4, Alvarez Dep. at 165:22-23.

10. Unbeknownst to Buckley, Alvarez made a recording of some or all of that call. Ex. 3, Gray Dep. 94:18-19 ("Q. Was that conversation recorded? A. I believe part of it was.").

11. In subsequent communications in the days and weeks that followed the Buckley Recording and Plaintiff's suspension, Alvarez did not equivocate: he had recordings of Plaintiff "bullying clients for [Plaintiff's] own benefit, using mentally damaged clients…threatening them…" Exhibit 6, Alvarez X posts.

---

[1] Cullen was deposed on September 30, 2026. The transcript is not yet available, but Plaintiff's counsel submits that Cullen testified that he was never abused or threatened by Plaintiff.

12. On January 29, 2025, Alvarez wrote to an attorney that partnered with USJAG, Aaron Drake, in an attempt to justify the decision to suspend and defame Plaintiff. He claimed that his conversations with Buckley and other USJAG clients:

> Painted a deeply disturbing picture of abuse of severely compromised service members who were genuinely terrified of any more contact from [Plaintiff]… **I have recorded these to protect all involved**.

Exhibit 7, Email from R. Alvarez to A. Drake.

13. For his part, Plaintiff tried to stop the dissemination of Defendants' false and defamatory statements immediately. The same day as the press release was disseminated, Plaintiff sent a cease-and-desist email to Defendants advising that if they persisted in their false and defamatory statements, he would "have no choice but to take immediate legal action." Exhibit 8, Email from J. Sorenson to N. Gray and R. Alvarez.

14. One week later, Plaintiff's then-legal counsel sent Defendants a "formal demand" to "immediately cease-and-desist from making or disseminating false, defamatory, and damaging statements" about Plaintiff. Exhibit 9, Letter from First & Fourteenth PLLC. Importantly, that February 4, 2025 letter also included an express advisement of Defendants' legal duty to preserve evidence, including recorded calls:

> You are further advised that **you each have a legal duty to preserve all evidence potentially relevant to this matter**, including paper documents, physical items, and electronic documents and data. Consistent with that duty, we demand that all such data in your possession, custody, or control be preserved and maintained in a readily accessible format. You also must take affirmative steps to suspend any deletion, overwriting, modification, or other destruction of any and all potentially relevant electronic data in your possession or custody, or under your control.
>
> Electronic data includes correspondence, documents, telephone logs, and other business records, such as email files, **voicemails, recordings of conference calls or videoconferences,** text messages, instant messages

> (IMs), ephemeral messaging apps, calendars, word processing files, spreadsheets, PDFs, JPEGs, PowerPoint presentations, cloud-based storage, wearable technology, Internet of Things (IoT) devices, workplace collaboration tools, temporary internet files, cookies, .ZIP files, and all other forms of electronic information, wherever it resides, including the Internet. You must preserve this information in its current form, without moving any electronic information or changing any related metadata (for example, a document's creation or last access date). Your preservation obligation also extends to the preservation of relevant data on external media, including hard drives, DVDs, CDs, USBs, personal home computers, laptops, and mobile devices, including smart phones and tablets, and to electronic data created after receipt of this letter. Paper documents include correspondence, handwritten notes, telephone logs, calendars, and other business records.

*Id*. (emphasis added).

15. This litigation began two months later, in March 2025; and Defendants have never been willing or able to produce the Buckley Recording.

16. Contrary to his repeated representations that he had recordings describing Plaintiff's alleged conduct, and despite Defendant Gray admitting that he listened to the Buckley Recording after it was made,[2] Defendants now claims that there was only a partial recording, it was difficult to hear, it was on his Alvarez's wife's phone, and that no effort was made to preserve the Buckley Recording (or Alvarez's contemporaneous notes of the call) or recover it after learning it had been deleted. Ex. 4, Alvarez Dep. at 169:14-174:14.

## LEGAL STANDARD

Spoliation is the destruction of evidence, or the failure to preserve it for another's use as evidence in pending or reasonably foreseeable litigation. *Giblin v. Sliemers*, 147 F. Supp. 3d 1207 (D. Colo. 2015); *see also Warembourg v. Excel Elec., Inc.*, 471 P.3d 1213, 1217 (Colo. App. 2020)

---

[2] Ex. 3, Gray Dep. at 95:18-20.

("The truth-seeking function of our legal system is thwarted if a party is deprived of material evidence during discovery or if the finder of fact is denied that evidence at trial."). "As a general rule, '[s]poliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *EEOC v. JetStream Ground Servs., Inc.*, 878 F.3d 960, 964 (10th Cir. 2017), quoting *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

In cases involving electronically stored information ("ESI"),[3] Fed. R. Civ. P. 37(e) provides an express framework for sanctioning spoliation. The Rule authorizes sanctions when "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

If the court concludes that evidence was not preserved and that the moving party suffered prejudice from the loss of the evidence, it "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Sanctions can include, for example, exclusion of specific evidence that the lost ESI would have contradicted, or an award of attorneys' fees incurred in connection with the spoliation. If the court finds "that the party acted with the intent to deprive another party of the information's use in the litigation[,]" the court may "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

[3] The Buckley Recording is ESI. Fed. R. Civ. P. 34(a)(1)(A) (expressly including "sound recordings" in the examples of ESI).

The moving party bears the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015). Under Rule 37(e), however, the court has discretion to determine which party should bear the burden of demonstrating prejudice or lack thereof. *Lakey v. Bryant*, 181 F.4th 1013, 1036 (10th Cir. 2026).

## ARGUMENT

### I. Defendants had a duty to preserve evidence after they received a cease-and-desist email from Plaintiff and a formal demand letter directing them to preserve evidence

Defendants' receipt of a cease-and-desist email on January 27, 2025, threatening litigation (Ex. 8) is alone sufficient to put Defendants on notice that future litigation was likely, and thereby trigger their obligation to preserve the Buckley Recording. *See, e.g., Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007) (obligation to preserve can arise prior to litigation if a party has notice that future litigation is likely). That is particularly true here because Defendants elected to ignore the cease-and-desist email entirely, all but assuring litigation.

Moreover, on February 4, 2025, Plaintiff's counsel wrote to Defendants to renew the demand to cease-and-desist in disseminating false, defamatory, and damaging statements about Plaintiff, and expressly advised Defendants of their legal duty to preserve all evidence, including electronic data such as recordings. *See* Ex. 9. This explicit and unequivocal direction to preserve evidence clearly triggered Defendants' duty to preserve the Buckley Recording created less than two weeks earlier.

**II. Defendants' failure to take any steps to preserve the evidence they touted as proving the veracity of their allegations against Plaintiff, was unreasonable**

Once it is established that a party's duty to preserve has been triggered, the inquiry into whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether what was done—or not done—was proportional to the case and consistent with clearly established applicable standards. *Zbylski v. Douglas Cnty. School District*, 154 F.Supp.3d 1146, 1164 (D. Colo. 2015).

Here, Defendants' failure to take any steps to preserve the Buckley Recording is *per se* unreasonable. For one thing, Defendants were expressly advised by Plaintiffs' counsel that they had a legal duty to preserve—doing nothing was no longer a reasonable option at that point. For another, Defendants surely realized the importance of the Buckley Recording. Alvarez stated that it was made "to protect all involved," and volunteered in social media posts that he was in possession of the "recordings" in an attempt to bolster his assassination of Plaintiff's character.

**III. Plaintiff is prejudiced by Defendants' spoliation of evidence**

There can be no real dispute that the Buckley Recording is relevant to disputed issues in the case. Defendants rely on Buckley's statements to insist that they were justified in suspending Plaintiff and that they were truthful when they suggested in the press release and elsewhere that Plaintiff abused clients through verbal assault, threats, and coercion.

At the same time, Plaintiff has good reason to believe that the Buckley Recording would contradict Defendants' testimony regarding the conversation. After all, Defendants also claim that Karolina Stancik made allegations of abuse and mistreatment by Plaintiff—something Stancik flat out denied in her deposition. And, after first suggesting that Rich Cullen was also mistreated by

Plaintiff, Defendants have been forced to backtrack and concede they never spoke with him prior to suspending Plaintiff and publicly portraying him of being a safety risk to USJAG clients.

The inability to listen to the Buckley Recording—regardless of the quality or the duration of that recording—is prejudicial to Plaintiff. Under the circumstances, it is reasonable to assume the deleted recording may refute Defendants' testimony regarding what Buckley is alleged to have told them. By Defendants' unreasonable failure to preserve, Plaintiff has been precluded from finding the truth of the recordings and thus prejudiced.

**IV. The Buckley Recording cannot be restored or replaced**

Sanctions are warranted here because the Buckley Recording cannot be recovered or substituted through other discovery means. Fed. R. Civ. P. 37(e). While admittedly not the model of clarity, Alvarez's testimony appears to confirm that efforts to restore the deleted recording were explored but ultimately unsuccessful. Ex. 4, Alvarez Dep. at 173:10-13 ("when we started getting closer to this point, I thought we should maybe try to see if we can get that thing fixed. There's some companies that do restoration of stuff."). Plaintiff assumes that, at this point, if the Buckley Recording could have been restored, Defendants would have done so.

Additionally, because witnesses' memories fade with the passage of time, courts recognize that witness testimony is not a replacement for spoliated evidence and therefore not a basis to deny a spoliation motion under the "restored or replaced" prong of the spoliation analysis. *See, e.g., Mcqueen v. Aramark Corp.*, 2016 WL 6988820, at *4 (D. Utah 2016).

## V. The sanction necessary to cure the prejudice is to preclude Defendants from presenting testimony or other evidence regarding the substance of the Buckley Recording

Under Rule 37(e)(1), when a court finds that the loss of ESI prejudiced another party, it may order sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37. It is not incumbent on the court to find bad faith or intent. Plaintiff's demonstration above of a duty to preserve, unreasonable efforts by Defendants, and resulting prejudice is sufficient basis to sanction Defendants in the court's sound discretion.

Because the spoliation here has prevented Plaintiff from discovering the actual substance of the Buckley Recording and thus jeopardized Plaintiff's ability to obtain justice in this matter, Plaintiffs respectfully request that appropriate sanctions include: exclusion of Defendants' testimony or other evidence regarding the substance of the Buckley Recording; and attorneys' fees in connection with this spoliation dispute. These sanctions are narrowly tailored and aimed at curing the prejudice to Plaintiff, based on Plaintiffs' belief that the spoliated Buckley Recording would have contradicted the testimony Defendants now seek to provide regarding the substance of that conversation.

## VI. Alternatively, Plaintiff should be granted leave to depose Buckley

As discussed above, witness testimony is not a substitute for spoliated evidence. Nevertheless, if the Court declines to exclude Defendants' testimony regarding the Buckley Recording for any reason, Plaintiff respectfully requests, as alternatively relief, leave to subpoena and depose Buckley regarding his recollection of the January 24, 2025 phone conversation with Alvarez.

Trial is not imminent (currently set to commence May 3, 2027), and one additional deposition can be scheduled without impacting any other deadlines or the scheduled trial date.

**CONCLUSION**

The elements of Fed. R. Civ. P. 37(e) are readily satisfied. The Buckley Recording should have been preserved in anticipation of this litigation but was lost because Defendants failed to take any steps to preserve it. Because the recording cannot be replaced, the appropriate sanction to remedy the prejudice to Plaintiff is an order precluding Defendants from presenting testimony regarding the spoliated recording, and awarding Plaintiff his reasonably attorneys' fees in connection with the spoliation.

WHEREFORE, Plaintiff Jeremey Sorenson respectfully requests that the Court enter an Order sanctioning Defendants for spoliation of evidence, and awarding such further relief as the Court deems just and proper.

Respectfully submitted this 30th day of September, 2026.

WILLIAMS WEESE PEPPLE & FERGUSON PC

*/s/ Jeffrey M. Lippa*
Jeffrey M. Lippa
1801 California Street, Suite 3400
Denver, CO 80202
Telephone: (303) 861-2828
Facsimile: (303) 861-4017
Email: jlippa@williamsweese.com

DECKER AND JONES

Christopher R. Decker
2025 York Street
Denver, CO 80205
Telephone: (303) 573-5253
Facsimile: (303) 573-5257

Email: CDecker@DeckerJonesLaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of September, 2026, a true and correct copy of the foregoing was served via email upon the following counsel of record:

Aaron B. Belzer
Kyle R. Hosmer
Belzer Law
737 29th Street, Suite 100A
Boulder, CO 80303
aaron@belzerlawfirm.com
kyle@belzerlawfirm.com

*Attorneys for Defendants*

*/s/ Jeffrey M. Lippa*
WILLIAMS WEESE PEPPLE & FERGUSON P.C.